ORLEANS,
*March,*
1841.

Brown *et al.*
*v.*
Taylor.

---

WELCOME BROWN and others, *v.* GAMALIEL TAYLOR, Adm'r. of JOHN McDANIEL.

If a person, claiming land by a deed of warranty, commences a suit to recover the possession of the land, and gives notice to his grantor to appear and make title, and his grantor dies pending the suit;—the grantee is not under obligation to give notice to the representatives of such grantor, to bind them.

A judgment rendered in an action of ejectment, where such notice has been given, is conclusive evidence against the representatives of the grantor, in an action on the covenant of warranty.

Where a suit was brought to obtain possession of one particular lot of land, and the plaintiff failed to recover, and afterwards sued his grantor, in covenant, damages, in the latter action, can only be assessed for that lot, and not for the whole right to which the lot was laid, although the covenant extended to the whole right.

THIS was an action of covenant, brought to recover damages for a breach of a covenant of warranty, contained in a deed from John McDaniel, the defendant's intestate, to Asa Aldis and Daniel Owen, dated October 15, 1800, conveying the right of Experience Fisk, in Duncansboro', now Newport, in the county of Orleans.

The defendant pleaded *non est factum*, and several pleas in bar. Issues were joined to the country.

On the trial in the county court, the plaintiffs gave in evidence the deed above described, and also proved, by the charter of said town, that Experience Fisk was one of the original grantees of said town.

The plaintiffs then showed a regular chain of title, from the said Aldis and Owen, grantees of said McDaniel, through several assignees to the plaintiffs, and also showed a regular chain of title to the whole right, from the said Experience Fisk, through several assignees, to one Ebenezer Kimball.

The plaintiffs then proved, by the files and records remaining in this court, that, on the 9th day of August, A.D. 1833, they brought their writ of ejectment against said Ebenezer Kimball, to recover the seizin and possession of said right of land, made returnable to the then next term of said Orleans county court; and that, on the 31st day of said August, 1833, the plaintiffs caused the said McDaniel to be cited to appear before said court, at said term, and show title to said land, and keep and perform said covenant; and read in evidence the affidavit of Joshua Sawyer, showing that he professed to be the attorney of said McDaniel, which was used to procure a continuance of said suit against said Kimball, in which affidavit it was stated that McDaniel had not had time to procure the record of Pearl's vendue, under which he derived title.

The plaintiffs also proved, by the records of said court, that, at the June term, A. D. 1834, a full trial was had in said cause, and a verdict rendered in favor of said Kimball to recover his costs; that the court gave judgment thereon; that exceptions were filed by the plaintiffs, and allowed by the court, and the case passed to the supreme court, and that the judgment of the county court was affirmed by the supreme court, at the March term, 1835. It appeared, from the exceptions in that suit, that lot No. 5 was the only lot sought to be recovered by the plaintiffs in that suit.

The plaintiffs then proved a division of said town of Duncansboro' (now Newport) into severalty, and that it was surveyed in three divisions, and that the right in question was located as follows;—

No. 5, in the first division, containing 119 acres.

No. 128, in the second division, containing 119 acres.

No. 37, in the third division, containing 91 acres.

And that lot No. 5, in the first division, was the only lot in the actual possession of the said Kimball, at any time during the pendency of said suit against him, and that lot No. 128, in the second division, is yet wild. And it was proved, that a person was in possession of lot No. 37, in the third division, at the time of the trial; but it did not appear that he claimed any title thereto from any person, nor that Kimball had conveyed any part of said right, nor that any person was claiming any part thereof, by, from, or under Kimball.

The defendant then offered to show that McDaniel had a good title to the whole of said right of land, on the said 15th day of October, A. D. 1800, at the time when he conveyed to Aldis & Owen, and that the title passed by said deed; and also offered to prove that McDaniel died before the 14th day of November, 1834, and that the said Gamaliel Taylor was duly appointed administrator of his estate, on the said 14th day of November, 1834, and contended that the administrator ought to have been cited to appear and prosecute the suit in favor of the plaintiffs, against Kimball, in the supreme court, to all which the plaintiffs objected, and the whole was rejected by the court. The defendant then contended, that lot No. 5, in the first division, and that only, should be included in the estimation of damages. But the court decided otherwise, and charged the jury to include the whole right in their estimation of damages, distinguishing the several lots in their estimate.

The jury found for the plaintiffs " to recover of the defen-
' dant, in respect to lot No. 5, in the first division, and the
' expenses arising in the suit against Kimball, the sum of
' $451.28 damages, and in respect to lot No. 128, in the
' second division, and lot No. 37, in the third division, the
' further sum of $429,95 damages, making, in the whole,
' $881.23 damages, and their costs."

The defendant excepted to the decisions and charge of the county court.

*S. A. Willard* and *E. Paddock*, for defendant.

A covenantor cannot be adjudged liable on his covenants, without first having his day in court, to show that he has kept and performed them; and, in analogy to the laws of the state, and judicial proceedings, if vouched in, it must be done the first term, *Whitbeck* v. *Shoefelt*, 9 Johns. 265, or before a judgment shall have passed against the voucher; for the vouchee will have a right once to review a judgment had against his title; and though the forms are different, yet, virtually, it is an adversary suit; and the vouchee is entitled to all the privileges and advantages of a trial, that he would be were the suit directly upon the covenants. He is not bound by the decisions of the county court, in the one case, more than in the other, and has the same right to carry the case

before the supreme court, by exceptions, that he would have in any case where he might be a party to the suit.

But it is said that McDaniel was cited in, and, at one term, appeared by Joshua Sawyer, his attorney, and asked for a continuance; and that McDaniel put in his title and had a full hearing, and filed his exceptions to the decisions, and the case was passed to the supreme court. We admit that, in June, 1834, a final trial was had in the county court, in which it appears exceptions were filed by the plaintiffs. But whether by them or McDaniel, does not appear. Previous to the session of the supreme court, in March, 1835, McDaniel died, and one Taylor was appointed to administer his estate, but was not cited to appear and support the bill of exceptions, and the judgment of the county court was affirmed without his knowledge, and this judgment, the plaintiffs say, is to close his mouth against showing title in McDaniel.

The judgment in the county court was not the final judgment in the case; the files were all removed to, and form a part of the records in the supreme court. The proceedings and judgment are there recorded, intervening damages are added to the amount of the verdict, and the execution contains the costs of both courts. The facts found by the jury are subject to be varied and controlled by the questions of law submitted to the consideration of the court, and the Statute of 1824, § 12, 13, p. 122, makes the decision in the supreme court the *final decision*; in short, in policy and in practice, it is the dernier resort. Being aggrieved by the decision of the county court, the plaintiffs removed their case to the supreme court, whither McDaniel had the right to follow them, but he died before the session. Therefore, as McDaniel was dead, before the judgment was rendered, and as Taylor was not cited in, the proceedings and judgment can have no binding effect upon the estate of McDaniel, for the judgment must operate upon the person, or the representative; the person, that is, McDaniel, was dead, and the representative, Taylor, was not cited, and had no knowledge of the suit, for that which does not appear, does not exist; and if McDaniel was privy or party to the suit, error would have lain to reverse the record at the instance of Taylor. *Shepherd* v. *Lucas*, 1 Burr. 410; *Swan* v. *Brown*, 3 Burr. 1595,

and 1 Blk. R. 526; *Wynn* v. *Wynn*, 1 Wils. 35, 42, cited 1 Burr. 410; 2 Saund. 42. j.

Though the record remains unreversed, yet, the plaintiffs cannot avail themselves of it in the present suit, to estop us from showing performance of our covenants, although they can use it to show an eviction. But any other use may be rebutted by the showing that McDaniel was dead, and Taylor not cited in; and being subject to such rebuttal, Taylor was under no necessity of reversing the record, as the record shows McDaniel's death. If the plaintiffs suffer, it is the result of their own laches. The statute is definite and peremptory that the plaintiffs should not have proceeded with their action, after the demise of McDaniel, until administration had been had, and the administrator cited in; and the case of *Wynn* v. *Wynn* and *Swan* v. *Brown*, go fully to show that a judgment otherwise. had, would be illegal, or at least inoperative, against Taylor.

The case, then, stands as it would have stood if McDaniel had not been cited into the county court, and though the record is evidence of the eviction, it is no evidence that Kimball's title is older and better than McDaniel's, for the reason that Taylor had not had his day in court to make the fact appear; therefore, the plaintiffs must prove Kimball's title. *Hamilton* v. *Cutts*, 4 Mass. R. 352.

*T. P. Redfield*, for plaintiffs.

I. A decision against the title of the covenantor, and a failure to obtain possession of the land on a suit brought for that purpose, even without notice to the covenantor, has been held, *prima facie*, a sufficient breach of the covenants to enable the covenantee to recover. *Park* v. *Bates*, 12 Vt. R. 381.

1. But this case shows a decision, both against the title of the covenantor, and in favor of the person in possession of one lot, claiming the whole right.

2. It has been decided *in Massachusetts* and at *common law*, that want of title in the covenantor, and an outstanding title in another person, which has been asserted, is a sufficient breach of the covenants, to enable the covenantee to recover. *Hamilton* v. *Cutts*, 4 Mass. R. 349; *Sprague* v. *Baker*, 17 Mass. R. 586; *Frazer* v. *Skey*, 18 Com. Law R. 441;

ORLEANS,
*March*,
1841.

Brown *et al.*
*v.*
Taylor.

*Hacket* v. *Glover*, 7 Petersdorf, 157; do. 236; *Smith* v. *Compton*, 23 Com. Law, 106.

II. In regard to notice, the record shows that the covenantor had full notice, and appeared and procured a continuance for the express purpose of putting in his title, and he is as much estopped by that judgment as if he had been a party to that record. *Duffield* v. *Scott*, 3 Term. R. 374; *Smith* v. *Compton*, 23 Com. Law. 106; *Warner* v. *McGary*, 4 Vt. R. 507.

But if the party be cited and refuse to appear, the judgment is equally conclusive upon him, for, by refusing to appear and make out his title, the land has become irretrievably lost to the plaintiffs; per Parsons, Ch. J. in *Hamilton* v. *Cutts*; Park, J. in *Smith* v. *Compton*; *Duffield* v. *Scott*, 3 Term R. 374.

III. In regard to citing the administrator to prosecute a writ of error, on exceptions taken by the counsel for McDaniel, it could not in any case be necessary; for,

1. The judgment had already gone against McDaniel's title, and it was not necessary for us to proceed further.

2. If he had been party to that judgment, and the writ of error had been brought in his own name and the plaintiff's, it must have been prosecuted in the name of the survivor.

3. A judgment in the county court, where exceptions are taken, is always in force until reversed, even when the excepting party dies. 1 Vt. R. 14.

4. If any benefit was expected from the exceptions by McDaniel, his counsel, or personal representatives, it was *their* business, and *not ours*, to pursue them.

IV. There can be no good reason why the plaintiffs should not recover for the whole right, as well as *for lot No. 5.*

1. The record shows that the suit against Kimball was brought to recover the possession of the whole right.

2. That Kimball was in the possession of one lot, claiming the whole right *by the same title, and under the same deed.*

3. That the defendant's intestate was vouched in to make out his title to the whole right, and failed therein; and there was a judgment of court, against his title to the whole right, *and in favor of Kimball's.*

4. Plaintiffs show a legal title to the whole right, in Kim-

ball, and a judgment of court against McDaniel's title, and, therefore, if the plaintiffs attempt to oust Kimball of his possession, they become trespassers, for the judgment of the suit against Kimball is conclusive upon the plaintiffs. Will the law compel the plaintiffs to commit a trespass, *merely as a matter of form*, in order to show a breach of McDaniel's covenants? Such a requisition would be too frivolous.

*Orleans, March, 1841.*

*Brown et al. v. Taylor.*

There having been a decision against the title of the grantor, in 1833, the statute of limitations began to run, and if suits must be brought for both the other lots, our claim might be *barred* before our cause of action became perfect.

The opinion of the court was delivered by

Williams, Ch. J.—The questions arising in this case are, *first*, whether the judgment rendered by the supreme court, at the March term, 1835, in the suit in favor of the present plaintiffs against Ebenezer Kimball, was conclusive evidence against this defendant of a want of title in his intestate to the lot then recovered against the said Kimball, so as to preclude him from showing title to the lands in this suit, and, *second*, whether the rule of damages adopted by the county court, in giving the value of the whole right, was correct.

It appears that Kimball was in possession of only part of the right of Experience Fisk, to wit, of lot No. 5, and shortly after the commencement of the suit against Kimball, the plaintiffs cited McDaniel, the defendant's intestate, to appear and show title to the land then sued for. After the judgment rendered in that suit, in the county court, in favor of Kimball, adverse to the title of the plaintiffs, derived from McDaniel, McDaniel died. Exceptions, it seems, had been taken to the decision of the county court, which had not been heard at the death of McDaniel, and no further notice or citation was given to his administrator. The judgment of the county court was affirmed in March, 1835.

We are of opinion that the plaintiffs, having commenced an action of ejectment against a person in possession of the lands deeded and warranted to them by McDaniel, and having given notice thereof to McDaniel, in his life time, was not required to do any thing further in order eventually to charge McDaniel, or his legal representatives, with the consequences of a failure to establish a title in them to the lands

conveyed. On serving that notice, it became the duty of McDaniel to make proof of his title in that action, and this duty devolved upon his legal representatives, without any further notice from the plaintiffs. Their failure to establish, or make proof of title, was equivalent to an eviction, and, according to the decision of this court, made in the case of *Park* v. *Bates*, 12 Vt. R. 381, entitled the plaintiffs to maintain this action. The effect of such a judgment, with notice, is conclusive evidence of the want of title in the grantor, and sufficient to enable the grantee, or his assigns, to maintain an action on the covenant of warranty, unless it can be made to appear that the recovery was had on account of some act or neglect on the part of the grantee, or his assigns. The offer, in this case, to show a title in McDaniel, at the time he conveyed to the persons under whom the plaintiffs claim, without showing that such title had been lost through the fault or neglect of the plaintiffs, or the persons conveying to them, was inadmissible and properly rejected by the court, as it would be, in effect, to try the same questions which had once been adjudicated in a suit to which the defendant was, or might have been, a party.

As this judgment was thus conclusive, so as to enable the plaintiffs to maintain this action, it could only be conclusive as to that part of the land, formerly conveyed by McDaniel, which was in controversy in that suit, and there adjudicated. This was lot No. 5, only, as that was the only lot of which Kimball was ever in possession. And, from the exceptions and judgment in the case, it appears it was the only lot in controversy, in that suit. Whether the original declaration in the suit against Kimball declared for the whole right, or the lot of which he was in possession, the judgment was only conclusive as to this particular lot. It would not have availed the plaintiff in that suit to establish a perfect title to any other part of the right of Fisk, unless they could show a title to the lot in controversy. The result, therefore, is, there has been no eviction, or that which is equivalent to an eviction, of any other part of the right in question, except lot No. 5, and this was necessary to enable the plaintiffs to recover on the covenant of warranty. We are not to say whether it is, or will be, of importance to the plaintiff to enter into possession of the other parts of the right, or commence any action

to recover therefor. As the defendant was precluded from giving any evidence of the title of his intestate, by the operation of the judgment, rendered in the action against Kimball, he will not be precluded from showing a title to any other part of the right when he is legally called on so to do. The county court, in rendering judgment on the verdict of the jury, for the value of the whole right, erred, and this judgment is reversed, and judgment is to be rendered for the plaintiffs to recover the value of lot No. 5, only, which the jury estimated at four hundred and fifty-one dollars and twenty-eight cents.